**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS COAL COUNCIL, *et al.*, )<br><br>　　　　Plaintiffs, )<br><br>v. )<br><br>DIRK KEMPTHORNE, )<br><br>　　　　Defendant, )<br><br>　and )<br><br>NATIONAL MINING ASSOCIATION )<br>101 Constitution Avenue, N.W. )<br>Suite 500 East )<br>Washington, DC  20001, )<br><br>　　　　Proposed Intervenor. )<br>　　　　　　　　　　　　　　　　　　　) | No. 1:08-cv-00190-JR |

**UNOPPOSED MOTION FOR LEAVE TO INTERVENE AS PARTY DEFENDANT,**
**AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure and Rule 7 of this Court, the

National Mining Association ("NMA") hereby moves to intervene in this action as a party

defendant.  NMA seeks intervention as of right under Rule 24(a)(2) or, alternatively, permissive

intervention under Rule 24(b)(2).

A proposed Order, Answer, and Corporate Disclosure Certificate accompany this motion

pursuant to LCvR 7(c) and (j), and LCvR 7.1.  Pursuant to LCvR 7(m), counsel for NMA has

conferred with counsel for the other parties to determine whether there is opposition to this

motion.  Plaintiffs' counsel (Mr. Dougherty) and defendant's counsel (Ms. Storey) advise that

their respective clients do not oppose this motion.

## INTRODUCTION

In this lawsuit, plaintiffs challenge the validity of regulations issued by the Secretary of the Interior through the Office of Surface Mining Reclamation and Enforcement ("OSM") on December 3, 2007. 72 Fed. Reg. 68000-68031. The regulations, to be codified principally in various sections of 30 C.F.R. Parts 773, 774, and 778, implement provisions of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), primarily SMCRA §§ 507 and 510(c), 30 U.S.C. §§ 1257, 1260(c) (concerning permit application requirements, and permit approval or denial).

Under SMCRA, any person wishing to conduct surface coal mining operations must obtain a permit from OSM or a state regulatory authority under an OSM-approved state program. SMCRA § 506, 30 U.S.C. § 1256. A permit application must include, *inter alia*, information about the ownership of the applicant, and a statement of whether the applicant, or any subsidiary, affiliate, or persons "controlled by or under common control with the applicant," has ever held a federal or state mining permit that has been suspended or revoked within the five years preceding the date of the application. SMCRA § 507(b), 30 U.S.C. § 1257(b). An applicant is ineligible to receive a permit if any surface coal mining operation "owned or controlled" by the applicant is currently in violation of SMCRA or certain other laws. SMCRA § 510(c), 30 U.S.C. § 1260(c).

"Ownership" and "control" are pivotal concepts. Under OSM's regulations, "ownership" and "control" relationships can result in the blocking of permits in many contexts, including initial permit issuance, permit revisions and renewals, and the transfer, assignment, and sale of permit rights. In addition, existing permits can be suspended or rescinded if they are deemed to be "improvidently issued" as a result of ownership or control relationships. *See generally* 30 C.F.R. §§ 773.8, 773.9, 773.12, 773.21-.28, 774.11-.17, 778.11.

Since OSM promulgated its first ownership and control regulations in 1988 and 1989, the regulations (and OSM's computerized database for tracking ownership and control relationships, the Applicant Violator System) have been the subject of multiple lawsuits by both NMA and environmental groups in this Court and the D.C. Circuit under the judicial review provision of § 526(a)(1) of SMCRA, 30 U.S.C. § 1276(a)(1). In the most recent suit prior to this one, NMA challenged ownership and control regulations OSM had issued in 2000. Those rules purported to address, *inter alia*, defects the D.C. Circuit had found in predecessor rules.[1] *See* 65 Fed. Reg. 79582 (Dec. 19, 2000).

Under Court-approved settlements in NMA's suit, OSM agreed, *inter alia*, to publish proposed rules in the Federal Register to address legal deficiencies NMA had alleged in the 2000 rules. *See NMA v. OSM*, No. 01-0366 (CKK) (D.D.C. Feb. 25, 2002; Feb. 25, 2003; Sept. 29. 2003; Apr. 2, 2004; June 9, 2004) (Dkts. 21, 31, 39, 42) (orders approving multiple partial settlements); *see also id.* Dkts. 20, 32, 38, 41, 43 (joint motions describing, and requesting approval of, partial settlements). Following extensive public rulemaking proceedings under the Administrative Procedure Act, as described at 72 Fed. Reg. 68001, including three notices of proposed rulemaking, OSM published its final rules on December 3, 2007. Those rules and the settlement record in NMA's lawsuit (which is still pending before Judge Kollar-Kotelly) are the subjects of this litigation. *See* Compl. ¶¶ 1, 28.a.

---

[1] We follow OSM's preamble in referring to the D.C. Circuit's previous major rulings as "*NMA I*" and "*NMA II*." *See National Wildlife Fed'n v. Babbitt*, 41 Env't Rep. Cas. (BNA) 1515, 1525, 1529 (D.D.C. Aug. 31, 1995), *rev'd sub nom. NMA v. U.S. Dep't of the Interior*, 105 F.3d 691 (D.C. Cir. 1997) ("*NMA I*"); *NMA v. Babbitt*, No. 94-2740 (AER) (D.D.C. July 10, 1996), *vac'd in part and aff'd in part sub nom. NMA v. U.S. Dep't of the Interior*, 251 F.3d 1007 (D.C. Cir. 2001) ("*NMA II*"). For a summary of the prior litigation, see OSM's preamble to the regulations at issue in this case, 72 Fed. Reg. 68000-01 (Dec. 3, 2007).

## BACKGROUND ON PROPOSED INTERVENOR

NMA is the national trade association of the mining industry.  NMA's members include the producers of most of America's coal, metals, and industrial and agricultural minerals; manufacturers of mining and mineral processing machinery, equipment, and supplies; and engineering and consulting firms that serve the mining industry.  NMA and its predecessors have participated in virtually all of the major legislative, rulemaking, judicial review, and other proceedings related to the enactment and implementation of regulatory programs under SMCRA. This includes, as explained above, the pending litigation whose settlement required OSM to commence the public rulemaking process that plaintiffs challenge in this case.  NMA's members are significantly affected by these regulations through a variety of means (including information disclosure requirements, delayed or blocked permits, and civil and criminal penalties) and would therefore be significantly and adversely affected if the plaintiffs were successful in their challenge to these regulations.

NMA seeks to intervene in this case to protect its members' interests as regulated entities. NMA's members cannot carry on their surface coal mining and reclamation operations without permits issued by OSM or by a state regulatory authority under an OSM-approved state program. *See* 30 U.S.C. § 1256.  The regulations OSM issued in 2000, which NMA challenged in *NMA v. OSM*, went to the heart of the permit process.  The regulations purported to amend surface coal mining permit application and permit information requirements and to redesign permit eligibility criteria under SMCRA; and to implement § 507(b)'s permit application requirements and § 510(c)'s provisions for permit approval and denial, as well as SMCRA's provisions for civil and criminal liability, §§ 518(e), (g), 521(c) (30 U.S.C. §§ 1268(e), (g), 1271(c)).  *See* 65 Fed. Reg. 79582-84.

NMA challenged those regulations on multiple grounds.  Through settlement, NMA agreed to drop certain of its claims, and OSM agreed to *propose* (but not to finalize) certain regulatory language and clarify some aspects of its 2000 rules.  *See* 72 Fed. Reg. 68001.  NMA has an interest in ensuring that, whatever their flaws, the new rules are not invalidated by the Court and that the inappropriate and unlawful regulations which NMA had just sued to overturn are not reinstated.  *See, e.g.*, Compl. ¶¶ 6, 28.  In addition, as a party to the Court-approved settlement, NMA has a strong interest in ensuring that the settlement remain intact.

As we explain below, these interests, together with the inability of the existing parties to protect NMA's interests adequately, provide a sound basis for NMA's intervention in this case.

## ARGUMENT

## I.    NMA IS ENTITLED TO INTERVENE AS OF RIGHT

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides, in pertinent part:

> Upon timely application anyone shall be permitted to intervene in
> an action:  . .  (2) when the applicant claims an interest relating to
> the property or transaction which is the subject of the action and
> the applicant is so situated that the disposition of the action may as
> a practical matter impair or impede the applicant's ability to protect
> that interest, unless the applicant's interest is adequately
> represented by existing parties.

To intervene as of right under Rule 24(a)(2), an applicant must satisfy four elements: "(1) timeliness; (2) cognizable interest, (3) impairment, and (4) lack of adequate representation." *Williams & Humbert, Ltd. v. W & H Trade Marks (Jersey)*, 840 F.2d 72, 74 (D.C. Cir. 1988); *see also Fund for Animals v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003).  In addition, the D.C. Circuit interprets Rule 24(a) to require that a proposed intervenor demonstrate its standing under Article III of the Constitution.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (collecting cases); *Fund for Animals*, 322 F.3d at 732.

NMA satisfies all of these requirements and should be granted intervention as of right.

- 5 -

### A.    This Motion Is Timely

NMA's motion is timely.  "Timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (footnote omitted).

This case is still at a preliminary stage.  It was filed less than two months ago, and defendant's answer has not yet been filed.  A motion to intervene prior to a defendant's answer is timely.  7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1916, at 557 (3d ed. 2007) (a motion to intervene "made before the existing parties have joined issue in the pleadings has been regarded as clearly timely").  In addition, no preliminary or dispositive motions have been filed, nor have any rulings on the merits been entered or a briefing schedule set.  The fact that "little progress has been made in the underlying action" strongly militates in favor of timeliness here.  *LaRouche v. FBI*, 677 F.2d 256, 257-58 (2d Cir. 1982).

Moreover, the possibility of prejudice to those already party to the case by reason of the timing of NMA's intervention is low.  NMA seeks to "participate in an upcoming . . . phase of the litigation," *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977) ("*NRDC v. Costle*"), and not to reopen settled issues that would otherwise remain closed.  NMA's purpose for intervening is not to assert a different cause of action, but rather to join in defense of the rules issued by OSM.

Considering both the short amount of time since the filing of the Complaint and the significance of NMA's interests in intervention, this motion "cannot be regarded as untimely."

- 6 -

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (reversing district court and granting intervention of right to an economically-interested party).

    **B.**    **NMA Has Cognizable Interests That Could Be Impaired By The Disposition Of This Action**

We discuss the closely-related interest and impairment factors together. The "cognizable interest requirement assists in 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993) ("*PETA*") (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). NMA is clearly a "concerned person," since its members require the permits that plaintiffs would make unnecessarily (and, NMA believes, unlawfully) more burdensome to obtain, retain, and renew. As this case involves a challenge to important regulations implementing SMCRA, the Court's assessment of NMA's interests must be guided by the even "greater impetus to intervention that inheres in administrative cases" than in ordinary private litigation. *Neusse v. Camp*, 385 F.2d at 700. Indeed, since NMA is a party to the Court-approved settlements that precipitated the challenged rulemaking, it is axiomatic that NMA be granted intervention here. *See Energy Transportation Group, Inc. v. Skinner*, 752 F. Supp. 1, 2-3 (D.D.C. 1990) (reflecting grant of intervention as of right to parties to settlement agreement whose legality was challenged in separate lawsuit).

The potential for economic loss to NMA's members if plaintiffs prevail is another strong interest that justifies intervention. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967), *vac'd on other grounds sub nom. Utah Public Service Comm'n v. El Paso Natural Gas Co.*, 395 U.S. 464 (1969) (economic loss from implementation of a proposed consent decree warrants intervention). Permit applications for many mining operations could be inappropriately delayed or wrongly denied, and existing permits could be unfairly subject to

suspension or rescission if the scope of "ownership" or "control" under SMCRA § 510(c) and related provisions and implementing regulations were broadened, or if erroneously alleged "ownership" or "control" relationships were made more difficult to rebut.  Where a plaintiff seeks relief affecting the validity of a "permit," the permittee should be granted intervention of right.  *E.g., PETA*, 151 F.R.D. at 8 (intervention of right granted to the holder of federal permit in environmental group's suit against U.S. Fish and Wildlife Service under Endangered Species Act).[2]

NMA's regulated industry interest in avoiding greater burdens is sufficient for intervention here, as it has been in numerous other cases.  *E.g., Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) (timber industry intervention in environmental suit to restrict timber harvesting in National Forests); *Conservation Law Foundation of New England v. Mosbacher*, 966 F.2d 39, 43-44 (1st Cir. 1992) (fishing industry intervention in environmental suit seeking greater restrictions on fish harvesting); *NRDC v. Costle, supra* (chemical industry granted intervention is suit seeking greater regulation); *PETA*, 151 F.R.D. at 8 (federal permittee granted intervention in environmental group suit seeking to invalidate permit); *National Wildlife Fed'n v. Hodel*, 661 F. Supp. 473, 474-75 (E.D. Ky. 1987) (coal industry intervention in suit seeking greater regulation under SMCRA).

---

[2] A license or permit is a property right that is protectable through intervention.  *See, e.g., Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) (holder of a water quality permit had a "legally protectable interest" in the validity of its discharge permit, and could intervene as of right because the relief sought would require the EPA to make the permit more restrictive); *Animal Protection Inst. v. Martin*, 241 F.R.D. 66 (D. Me. 2007) (licensed fur trappers granted intervention in ESA suit that would enjoin state agency from issuing licenses); *Animal Protection Inst. v. Merriam*, 242 F.R.D. 524 (D. Minn. 2006) (same); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973) (holders of Atomic Energy Commission-issued nuclear facility licenses had a sufficient property interest to intervene as of right in an action challenging the validity of (continued…)

Lastly, due process and simple fairness suggest that all persons potentially affected by these regulations should be represented in this litigation – the Secretary of the Interior, who issued them; the plaintiffs, who challenge them; and NMA, whose members would bear the brunt of an order invalidating them. *See Kleissler*, 157 F.3d at 971 (in cases pitting private, state, and federal interests against each other, "[r]igid rules [barring intervention] contravene a major premise of intervention – the protection of third parties affected by the pending litigation. *Evenhandedness is of paramount importance*.") (emphasis added).

As to impairment of NMA's interests, Rule 24(a)(2) focuses on the *practical* impairment of one's ability to protect one's interests under the particular circumstances of the case. The Rule itself expressly provides for intervention of right when "the disposition of the action may *as a practical matter* impair or impede [one's] ability to protect [one's] interest" (emphasis added). The D.C. Circuit has consistently interpreted this language as requiring a court to look at the "practical consequences" of denying intervention when evaluating an intervention request. *Neusse v. Camp*, 385 F.2d at 702. *See Smuck v. Hobson*, 408 F.2d 175, 180-81 (D.C. Cir. 1969); *Textile Workers Union v. Allendale Co.*, 226 F.2d 765, 767 (D.C. Cir. 1955).

The practical effects of granting plaintiffs their requested relief would be to significantly and unlawfully impede or impair NMA's members' ability to obtain, renew, and retain permits, and to rebut unfounded allegations of "ownership" or "control"; and it would upend NMA's settlement of prior litigation with OSM. Intervention therefore is necessary to give NMA and its members the opportunity to protect those interests.

---

(…continued)

certain AEC equipment acceptance criteria and seeking an injunction to terminate the use of certain nuclear reactors).

## C.    The Representation Of NMA's Interests By Existing Parties May Be Inadequate

The final criterion for intervention of right is whether the representation of NMA's interests by the existing parties "may be" inadequate. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972). The "burden of that showing should be treated as minimal." *Id.* The "burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. AT&T*, 642 F.2d at 1293.

Since NMA's intervention is unopposed, this element is satisfied. In any event, NMA clearly is not adequately represented by plaintiffs. They advocate a statutory interpretation that NMA opposes and seek to prohibit NMA's members from conducting legitimate mining operations.

Nor can the Secretary adequately represent NMA's interests. The government "must represent the broad public interest, not just the economic concerns of [private] industry." *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *see Trbovich*, 404 U.S. at 539. This difference could well affect briefing strategy and arguments, and the interest in settlement or appeal – just as it did in earlier SMCRA rulemaking litigation, in which the Secretary opted to implement the Court's remand order, whereas NMA's predecessors, as intervenors, appealed. *National Wildlife Federation v. Babbitt*, 835 F. Supp. 654 (D.D.C. 1993), *appeal dismissed as moot*, No. 93-5378 (D.C. Cir. Oct. 27, 1994).[3] This difference warrants intervention of right. *See Trbovich*, 404

---

[3] Other examples in SMCRA rulemaking challenges include *National Wildlife Fed'n v. Lujan*, 928 F.2d 453 (D.C. Cir. 1991) (reinstating OSM's regulations by reason of mining industry intervenors' appeal, where OSM had declined to appeal); *Save Our Cumberland Mountains, Inc. v. Lujan*, 963 F.2d 1541 (D.C. Cir. 1992) (industry intervened to challenge prospective settlement agreement between U.S. Department of the Interior and environmental groups; on intervenors' (but not agency's) appeal, D.C. Circuit reversed district court, vacated settlement agreement, and dismissed plaintiffs' complaint).

U.S. at 539; *Kleissler*, 157 F.3d at 973-74 ("the straightforward business interests asserted by intervenors . . . may become lost in the thicket of sometimes inconsistent governmental policies"); *NRDC v. Costle*, 561 F.2d at 912 (the "possibility of disparate interests" between government regulators and industry "justif[ies] separate representation").

It is unclear whether the Secretary will make all arguments relevant to protecting NMA's interests. As prior rulemaking challenges and citizen suits under SMCRA have shown: (1) some relevant and potentially dispositive arguments may be deemed contrary to the government's interests as the enforcer of SMCRA; and (2) the government may be more inclined than NMA to settle this case by agreeing to changes that compromise NMA's interests in ensuring that its members can mine coal. All of these factors underscore why, under Rule 24(a)(2), the government "may" not adequately represent NMA's interests in this case.

Finally and more generally, NMA will add a necessary element to the proceedings, by allowing the economically-affected entities to be heard. Its participation will, therefore, lead to a more informed decision by the Court.

### D.     NMA Has Article III Standing

In the D.C. Circuit, a prospective intervenor – even one who seeks to intervene as a defendant[4] –must demonstrate that it has Article III standing by showing "(1) injury in fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 733 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

---

[4] The D.C. Circuit has noted the anomaly of requiring standing of someone who seeks to intervene as a *defendant*, since the standing inquiry is directed at persons who invoke a court's jurisdiction. *Roeder*, 333 F.3d at 233. But in a recent case the Circuit found no need to dwell on the issue, since "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Id.* (citing with approval *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). Here, since NMA satisfies Rule 24(a)(2), it has standing.

NMA readily satisfies the test for Article III standing.  If a party is itself the object of the government action at issue, there is "ordinarily little question" that the party can be harmed by the government action and that a judgment preventing the action will redress the injury.  *Lujan v. Defenders*, 504 U.S. at 561-62.  That is the situation here.  OSM's regulations, if made more burdensome on industry through this lawsuit, will injure NMA's members by inappropriately making their permits more difficult to obtain and retain.  *See, e.g., County of San Miguel v. MacDonald*, 244 F.R.D. 36, 44-45 (D.D.C. 2007) (expected increase in regulatory restrictions if suit were successful created sufficient basis for standing for affected business interests; intervention granted).  Moreover, if plaintiffs prevail, NMA will suffer injury to its interests as a party to the settlement in *NMA v. OSM*.  These injuries will be redressed by a favorable ruling from the Court, which will leave the challenged regulations in place and the prior settlement intact.

Indeed, every time the D.C. Circuit has addressed the mining industry's standing in judicial review of SMCRA rulemakings, it has found standing, including in suits challenging regulations whose impact on NMA's members was arguably less direct than it is here.  This case should be no exception.  *See National Coal Ass'n v. Lujan*, 979 F.2d 1548, 1551-52 (D.C. Cir. 1992) (R. Ginsburg, J.) (finding "utterly unpersuasive" OSM's argument that NMA's predecessor lacked standing to challenge individual penalty provisions in SMCRA regulations; companies' own economic interests were "vitally affected" even though regulations imposed penalties on individual company officers and agents and not directly on companies); *NMA v. U.S. Dep't of the Interior*, 70 F.3d 1345, 1349 (D.C. Cir. 1995) (NMA had standing to challenge regulation governing OSM oversight of state regulatory programs, because regulation was ultimately intended to compel permittees' compliance with SMCRA).  *See also NMA v.*

*Kempthorne*, 512 F.3d 702, 706-06 (D.C. Cir. 2008) (NMA is an "industry trade association with standing to bring suit on behalf of its members under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)").

## II.    ALTERNATIVELY, PERMISSIVE INTERVENTION SHOULD BE GRANTED

If intervention of right is denied, the Court should grant NMA's alternative motion for permissive intervention under Rule 24(b)(2).

Under Rule 24(b)(2), an applicant may be permitted to intervene if his application is timely, and if his claim or defense and the main action have a question of law or fact in common. NMA's application is timely, as explained above. Moreover, there is a complete identity between plaintiffs' claims and NMA's defenses as an intervenor-defendant who brings no affirmative claims.

The Court should exercise its discretion by finding it is in the interests of justice to allow all affected interest groups (the environmental group plaintiffs, the government regulators, and the economically-affected industry) to participate as parties in this case. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10-11 (D.D.C. 2007).

## CONCLUSION

For the foregoing reasons, NMA's motion to intervene should be granted.

Respectfully submitted,


_/s/ J. Michael Klise_____

Harold P. Quinn, Jr., No. 389969         J. Michael Klise, No. 412420
NATIONAL MINING ASSOCIATION              Thomas C. Means, No. 254318
101 Constitution Avenue, NW              CROWELL & MORING LLP
Suite 500 East                           1001 Pennsylvania Avenue, N.W.
Washington, DC  20001                    Washington, D.C.  20004-2595
(202) 463-2653                           (202) 624-2500


Dated:  March 27, 2008                   Attorneys for Proposed Intervenor
                                         National Mining Association

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 27th day of March, 2008, I caused a copy of the foregoing Unopposed Motion of National Mining Association to Intervene and Memorandum in Support, proposed Order, proposed Answer, and Rule 7.1 certificate to be served by e-mail and first class mail, postage prepaid, on the following:


Ruth Ann Storey
General Litigation Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC  20044-0663
ruth.ann.storey@usdoj.gov

Jim Dougherty
709 3rd Street, S.W.
Washington, DC  20004
JimDougherty@aol.com


*/s/ J. Michael Klise*
J. Michael Klise

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **CITIZENS COAL COUNCIL**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **DIRK KEMPTHORNE**, ) | **No. 1:08-cv-00190-JR** |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| **NATIONAL MINING ASSOCIATION** ) | |
| ) | |
| Intervenor-Defendant. ) | |
| _____ ) | |

**[PROPOSED] ANSWER OF INTERVENOR-DEFENDANT NATIONAL MINING**
**ASSOCIATION**

Intervenor-Defendant National Mining Association ("NMA") files this Answer pursuant

to Rules 12 and 24 of the Federal Rules of Civil Procedure.  Any allegation not specifically

admitted below is denied.  Answering the numbered paragraphs of the Complaint (Feb. 1, 2008),

NMA admits, denies, and avers as follows:

1.    The allegations of the first sentence of  Paragraph 1 consist of plaintiffs'

characterizations of this lawsuit and require no response.  The remainder of Paragraph 1 states

conclusions of law, to which no response is required.  Insofar as Paragraph 1 is deemed to

contain allegations of fact, those allegations are denied.

2-3.    Paragraphs 2 and 3 quote selectively from, and purport to summarize or

characterize, provisions of the Surface Mining Control and Reclamation Act ("SMCRA").

Those provisions speak for themselves and are the best evidence of their content. Any allegations to the contrary of that best evidence are denied.

4.      Paragraph 4 purports to describe "Congress' purposes" in enacting SMCRA. Those purposes are stated in the statute, which speaks for itself and is the best evidence of its content. Any allegations to the contrary of that best evidence are denied.

5.      NMA lacks sufficient information to form a belief as to the truth of the allegations of Paragraph 5 and therefore denies those allegations.

6-9.      Paragraphs 6-9 state conclusions of law, to which no response is required; insofar as they are deemed to contain allegations of fact, those allegations are denied.

10-18.      NMA lacks sufficient information to form a belief as to the truth of the allegations of Paragraphs 10-18 and therefore denies those allegations.

19.      The allegations of paragraph 19 consist of plaintiffs' characterization of this lawsuit, to which no response is required.

20.      Paragraph 20 states a conclusion of law, to which no response is required; insofar as it is deemed to contain allegations of fact, those allegations are denied..

21.      The allegations of the first three sentences of paragraph 21 are admitted. As to the fourth sentence, NMA avers that defendants' responsibilities for implementing statutes, regulations, and programs are set forth in the statutes, which speak for themselves and are the best evidence of their contents. Any allegations to the contrary of that best evidence are denied.

22-23.      Defendants' responsibilities under SMCRA and the Administrative Procedure Act are set forth in those statutes, which speak for themselves and are the best evidence of their contents. Any allegations to the contrary of that best evidence are denied.

24.    NMA admits that on October 10, 2006, the Office of Surface Mining Reclamation and Enforcement ("OSM") published a notice of proposed rulemaking, and that on December 3, 2007, OSM published the final regulations that plaintiffs challenge in this suit.  Any other remaining factual allegations of Paragraph 24 are denied.

25-26.    NMA lacks sufficient information to form a belief as to the truth of the allegations of Paragraphs 25 and 26 and therefore denies those allegations.

27.    NMA admits that on December 3, 2007, OSM published a final rule.  That rule and the accompanying preamble and underlying administrative record speak for themselves and are the best evidence of their content.  Any allegations to the contrary of that best evidence are denied.

28.    As to the first sentence of Paragraph 28, NMA incorporates its responses to Paragraphs 1 through 27, inclusive, as though fully set forth herein.  The second sentence and subparagraphs a through k of Paragraph 28 consist of conclusions of law, to which no response is required; insofar as they are deemed to contain allegations of fact, those allegations are denied.

29.    NMA incorporates its responses to Paragraphs 1 through 28, inclusive, as though fully set forth herein.

30.    Paragraph 30 consists of conclusions of law, to which no response is required; insofar as it is deemed to contain allegations of fact, those allegations are denied.

The remaining allegations of the Complaint consist of plaintiffs' Prayer for Relief, to which no response is required; insofar as they are deemed to include allegations of fact, those allegations are denied.  NMA denies that plaintiffs are entitled to any relief whatsoever, and respectfully prays that the Complaint be dismissed with prejudice in its entirety.

## GENERAL DENIAL

NMA denies each and every allegation in plaintiffs' Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES

1.      This Court lacks jurisdiction over some or all of plaintiffs' claims.

2.      Plaintiffs fail to state a claim on which relief can be granted.

Respectfully submitted,


*/s/ J. Michael Klise*

| | |
|---|---|
| Harold P. Quinn, Jr., No. 389969 | J. Michael Klise, No. 412420 |
| NATIONAL MINING ASSOCIATION | Thomas C. Means, No. 254318 |
| 101 Constitution Avenue, NW | CROWELL & MORING LLP |
| Suite 500 East | 1001 Pennsylvania Avenue, N.W. |
| Washington, DC  20001 | Washington, D.C.  20004-2595 |
| (202) 463-2653 | (202) 624-2500 |


Dated:  March 27, 2008            Attorneys for Intervenor-Defendant
                                 National Mining Association

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS COAL COUNCIL**, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **DIRK KEMPTHORNE,** ) | **No. 1:08-cv-00190-JR** |
| ) | |
| **Defendant,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **NATIONAL MINING ASSOCIATION,** ) | |
| ) | |
| **Proposed Intervenor.** ) | |
| ) | |

**CERTIFICATE REQUIRED BY LCvR 7.1 OF THE LOCAL RULES OF THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

I, the undersigned counsel of record for Proposed Intervenor National Mining

Association, certify that to the best of my knowledge and belief, there are no parent companies,

subsidiaries, or affiliates of the National Mining Association that have any outstanding securities

in the hands of the public.

These representations are made in order that judges of this court may determine the need

for recusal.

*/s/ J. Michael Klise*
J. Michael Klise
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Attorney of Record for National Mining
Association

Dated: March 27, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS COAL COUNCIL**, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>**DIRK KEMPTHORNE,** )<br><br>Defendant, )<br><br>and )<br><br>**NATIONAL MINING ASSOCIATION,** )<br><br>Intervenor-Defendant. ) | **No. 1:08-cv-00190-JR** |

**[PROPOSED] ORDER**

This matter came before the Court on the Unopposed Motion of National Mining Association for Leave to Intervene on the side of the Defendant.

The Court having considered such motion, and there being no opposition thereto,

IT IS NOW HEREBY ORDERED that Motion is GRANTED.


Date: _____          _____
                                        United States District Judge

The following counsel are entitled to notice of the foregoing order:

J. Michael Klise
Thomas C. Means
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, DC  20004
jmklise@crowell.com

Ruth Ann Storey
General Litigation Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC  20044-0663
ruth.ann.storey@usdoj.gov

James Dougherty
709 3rd Street, S.W.
Washington, DC  20004
JimDougherty@aol.com